# EDMUND T. SYKES v. CITY OF MINNEAPOLIS.[1]

December 19, 1913.

Nos. 18,278—(142).

**City of Minneapolis — removal of officer.**
1. The charter of the city of Minneapolis permits the city council to remove the supervisor of the city water works at will.

**Act constitutional.**
2. Such charter provision does not violate section 2 of article 13 of the Constitution.

From an order of the district court for Hennepin county, Leary, J., sustaining defendant's demurrer to the complaint and ordering judgment in behalf of defendant, plaintiff appealed. Affirmed.

*Fred W. Reed,* for appellant.
*Daniel Fish,* for respondent.

HOLT, J.

The complaint alleges that plaintiff was appointed to the position of supervisor of the waterworks of the city of Minneapolis for a term of two years from January 2, 1911, at the monthly salary of $300; that he accepted and performed the duties of his office until June 30, 1911, when, without cause and without a hearing, the city council removed him. He demands judgment against the city for the amount of the salary for the balance of the two years. The city demurred to the complaint. From the order sustaining the demurrer plaintiff appeals.

The question presented is the right of the city council to terminate the employment and salary of plaintiff at its pleasure. Of

[1] Reported in 144 N. W. 453.

---

Note.—On the question of the right to remove municipal officers summarily, see note in 15 L.R.A. 95. And as to whether power conferred upon municipality to remove its officers is exclusive, see note in 20 L.R.A.(N.S.) 1128. And upon the power of a municipality to remove officer in absence of statutory authority. see notes in 9 L.R.A.(N.S.) 572 and 39 L.R.A.(N.S.) 519.

course it cannot be doubted that as to any employee the city council may dispense with his services at will, regardless of the time for which he was hired, exactly as an individual may dismiss a servant, but that does not say that the appointee or servant so dismissed may not recover as damages the wages thereby lost, if the dismissal was wrongful. However we are not now concerned with a breach of contract of employment, for plaintiff's contention is that he was wrongfully removed from municipal office.

The city waterworks for some years prior to 1887 had been operated by a board of water commissioners under charter provisions giving such board the "right to appoint the engineer of the waterworks and superintendent of the waterworks, a secretary and assistant secretary, and employ such other persons as in the judgment of said board may be necessary for the successful operation and management of said waterworks and to designate and fix the compensation of the persons so to be appointed or employed by said board; and may remove such persons at its pleasure; provided, that such compensation shall not exceed the limits fixed by this act, which compensation shall cease when any such engineer, superintendent, secretary, assistant or other employee shall be so removed by said board."

By section 1 of chapter 23 (page 467) of the special laws of 1887 so much of the charter provision above quoted and so much of specified related sections "as created a board of water commissioners of the city of Minneapolis, is hereby repealed and said board is hereby discontinued and dissolved and all the property within its possession shall be at once turned over to the city council of the city of Minneapolis."

Section 2. "All the rights, powers, and duties and privileges heretofore conferred upon or vested in said board of water commissioners of the city of Minneapolis, by the charter of said city, are hereby conferred upon and vested in the city council of said city of Minneapolis," etc. It is plain that the effect of this legislation was not to repeal the existing charter provisions concerning the city waterworks, its mode of operation and the appointment of its superintendent, engineer, agents and employees, but simply to substi-

tute the city council in place of the board of water commissioners. It necessarily follows that the city council has the right to dismiss at will any officer or employee in the city waterworks department and when such dismissal takes place the salary ceases, unless subsequent legislation has changed the status of persons in the service of the city waterworks department.

We are referred to no subsequent charter amendment that would tend to change the provisions quoted unless it be found in section 1 of chapter 2 enacted by the same legislature.[1] "All other officers" (other than elective) "necessary for the proper management of the affairs of the city shall be appointed by the city council, unless in this charter otherwise provided. The appointment of such officers shall be determined by ballot, and it shall require the affirmative vote of a majority of all the members of the city council to appoint such officers. All officers required to be appointed by the city council shall, unless otherwise in this charter provided, hold their respective offices for the term of two (2) years from and after the first (1st) Monday in January of the year of their appointment."

After the waterworks was transferred to the city council an ordinance was enacted under which the committee on waterworks of the city council was given immediate control and management of everything pertaining to the waterworks, subject to confirmation of the council. But the council retained the right to appoint all officers and employees and prescribe the salaries, upon nominations and recommendations of the committee on waterworks. The ordinance makes provision for a supervisor who shall be the general executive officer of the works and must be an experienced mechanical engineer. His duties practically correspond with those of superintendent under the board of water commissioners' régime.

We are of opinion that the charter provisions relating to the appointment, tenure of position, and removal of so-called officers and employees in the city waterworks when managed by the board of water commissioners are still in force and govern the city council in the conduct of that department. The situation is similar to that in Parish v. City of St. Paul, 84 Minn. 426, 87 N. W. 1124, 87 Am. St. 374, where there was a substitution of managing powers. It is

[1] [Sp. Laws 1887, p. 431, c. 10, subc. 2, § 1.]

by no means clear that plaintiff comes within section 1 of chapter 2 of the charter above set out. In terms the section does not say that all persons appointed to a position shall hold the same for two years, but refers to officers *required* to be appointed by the city council. It is near at hand to say that the officers to be appointed for the specified term are those to fill the positions created by the charter itself, such as the city clerk, city engineer, city attorney, etc. Such officers are deemed indispensable to carrying on the strictly governmental functions of the municipality. The city waterworks is one of the public utilities which the city is authorized to own and manage as a side issue, and although it has the right to create officers or places to properly conduct this business the charter does not require this to be done. The position of supervisor was created by the council by ordinance. It may repeal this at pleasure. If it is done the office is gone. The ordinance referred to does not even style the supervisor a city officer but an officer of the "city waterworks."

But be that as it may, we hold that, even if the supervisor of the city waterworks be considered as an officer required to be appointed by the city council and therefore able to claim a definite tenure of office, nevertheless he is subject to removal at the pleasure of the city council. As stated before, we consider the provision in respect to appointment and removal of city waterworks officers and employees is the same now as during the existence of the board of water commissioners, with the single modification that, while under the régime of the board the appointment was for an indefinite time subject to removal at pleasure, it is now for two years subject to removal at pleasure. The provisions are not inconsistent. A person accepting the place formerly did not need to concern himself about an appointment every two years when the complexion of the city council changed, while now he does. His tenure in the meantime is no more secure now than it was then.

A great deal might be said in favor of legislation which gives the city council free hand to remove a superintendent, manager or agent in the city waterworks for the efficient and economical conduct of which, as a business proposition, the council is held responsible. To hold that one appointed to a place in that department could not be

removed within two years, except for malfeasance or nonfeasance and after a trial, as appellant contends, would be to seriously handicap the city council in the conduct of this extensive business enterprise. We have no doubt that the legislature intends to give municipalities authorized to own and manage public utilities the same freedom and opportunity to make the ventures successful as if owned and managed by private corporations or parties.

There is no need to cite authorities to the proposition that, when the appointing power is also authorized to remove at pleasure, it may do so even if the officer has a fixed tenure. But see State v. Mitchell, 50 Kan. 289, 33 Pac. 104, 20 L.R.A. 306; 29 Cyc. 1408, note 20; Hallgren v. Campbell, 82 Mich. 255, 46 N. W. 381, 9 L.R.A. 408, 21 Am. St. 557, is distinguished from a case like the one at bar by Trainor v. Board of Auditors, 89 Mich. 162, 50 N. W. 809, 15 L.R.A. 95.

It is insisted that under the Constitution appellant could not be removed, except upon a hearing and for cause. Section 1 of article 13 of the Constitution relates to the removal of certain state officers by impeachment. Section 2 reads: "The legislature of this state may provide for the removal of inferior officers from office, for malfeasance or nonfeasance in the performance of their duties." There can be no doubt that all elective municipal officers come within this section, and that such may not be removed except for malfeasance or nonfeasance in office.

But we are quite clear that this constitutional provision does not embrace an office created by an ordinance of a city to assist in carrying on the business of a public utility. Thus it is said in State v. Common Council of City of Duluth, 53 Minn. 238, 55 N. W. 118, 39 Am. St. 595: "The board of fire commissioners has, under the charter, absolute power to discharge any of the employees or officers of the department at their discretion." State v. Schram, 82 Minn. 420, 85 N. W. 155, does not suggest the unconstitutionality of a statute permitting the removal of a city marshal at the will of the council. State v. Thompson, 91 Minn. 279, 97 N. W. 887: "It is quite true, as a general proposition, that the power of removal of public officers is incident to the power of appointment (Parish v.

City of St. Paul, 84 Minn. 426, 87 N. W. 1124, 87 Am. St. 374), but this applies more particularly to appointive officers, and not to those elected by the people. The subject of removal of all officers is within legislative control, and where that body prescribes a manner and method of removal it is exclusive." So it must be held that, in the statutes constituting the charter of the city of Minneapolis, the legislature has provided that any officer in the city waterworks department, even if appointed for a term, takes such appointment subject to be removed at the pleasure of the city council.

This conclusion renders it unnecessary to construe section 4 of chapter 4 of the charter under which the right is claimed for the city council to remove at pleasure any one of its appointees whether it be one occupying an office created and required by the charter or one filling a position created by the council for the proper conduct of some public utility.

Order affirmed.

