### CAIN v. BROWN.

1. QUO WARRANTO—MANDAMUS TO COMPEL FILING OF INFORMATION —WHEN GRANTED.

   *Mandamus* will not issue to a prosecuting attorney to compel the filing of an information in the nature of a *quo warranto*, at the instance of a private person, unless the facts making a case for interference on the part of such officer are clearly made to appear by affidavit in such way as to render the affiant guilty of perjury if any material allegation is false.

2. MUNICIPAL CORPORATIONS—DISSOLUTION—HOW EFFECTED.

   A municipal corporation can cease to exist only by legislative consent or pursuant to legislative provision, and a failure for a term of years to exercise the functions of a municipality does not effect a dissolution.

3. SAME—VALIDITY OF PROCEEDINGS.

   Proceedings for the vacation of an incorporated village under 1 How. Stat. § 3080 *et seq.*, are invalid unless based upon a proper petition to the council as therein provided.

*Certiorari* to Lapeer; Smith, J.   Submitted January 5, 1897.   Decided March 10, 1897.

*Mandamus* by Emily L. Cain and others to compel William E. Brown, prosecuting attorney of Lapeer county, to file an information in the nature of a *quo warranto* against the acting officers of the village of Attica.

111 MICH.—42.

From an order granting the writ, respondent brings *certiorari*. Reversed.

*T. J. Kohler* (*John D. Conely*, of counsel), for relators.

*Geer, Williams & Halpin*, for respondent.

MONTGOMERY, J. This proceeding originated in the circuit court of Lapeer county, where an application was made by the relators for a writ of *mandamus*, directed to the respondent, requiring him to file an information in the nature of a *quo warranto* against David Donaldson and other officers of the village of Attica, in Lapeer county. The writ of *mandamus* was directed to issue by the circuit judge, and that order is brought before us for review on *certiorari*.

The petition set up the fact that the relators were taxpayers and resided within the territory which is claimed to· constitute the village of Attica. It appears from the petition that, by Act No. 311 of the Local Acts of·1885, certain territory in the township of Attica was organized into the village of Attica. The relators claim that a petition was circulated in the year 1890, asking for a vacation of the incorporation of said village, and that an election was held in the spring of 1891, at which election a majority of the votes cast upon the subject declared in favor of the vacation; that, from that time until 1895, no elections were held, but that in the spring of 1895 an election was held and officers chosen; and that again, in 1896, an election was held, and the respondents were chosen officers of the corporation.

This application was made on the 19th of May, 1896. It set up the fact that a petition was circulated and signed, but whether the same was signed by a sufficient number to constitute a majority of those who voted at the preceding election appears on information and belief. The petition did declare that a petition was prepared, and that it

was signed by a certain number. It also disclosed that this petition was mailed to Daniel West some eight or nine months prior to the time of the alleged election, the said Daniel West being at the time president of the village. It was also shown that certain notices were posted in the village before the election was held. It also appeared by affidavit that at the election 41 votes were cast, of which 21 were announced as in favor of the proposed vacation, and 20. against. No record of this proceeding has been discovered or is produced. No filing of a petition is shown, and the records were never deposited with the county clerk.

The respondent, in his answer to the petition in the court below, stated that, in his opinion, a *mandamus* ought not to issue to compel him to file an information, for the reason that he considered the evidence presented to him insufficient; that, among other things, the evidence fails to show that the petition necessary for the council to act upon was ever presented to the council, but that, on the contrary, it appears that no person who saw said petition after it was mailed to Daniel West, some eight or nine months prior to the time that the alleged election was held, has ever been found; that it does not appear that the council ever acted upon that or any other petition, and does not appear how many qualified voters were in the village of Attica, as shown by the poll list of the then last preceding election; and that the relators have not made such a precise and positive showing as should entitle them to a writ of *mandamus* as prayed for. The respondent further showed that a petition signed by 57 residents of the village of Attica had been presented to him, stating that the best interests of the village would be subserved by allowing the people to continue the exercise of their corporate rights, and that another petition, signed by other citizens, and to the same purport, was afterwards received by him. The respondent further states that he has no interest whatever in the matter, save that of faithfully discharging the duties of his office, and

that, in his opinion, the evidence presented to him is insufficient to warrant him in filing an information in the nature of a *quo warranto*, but, on the contrary, that it is his opinion that the public interests demand that such an information should not be filed.

It is the settled doctrine that caution is exercised by the courts in granting leave to file an information of this character at the instance of a private party, where such private party has no special interest, except one which is common to all citizens alike. 19 Am. & Eng. Enc. Law, 665. And in this State it has been held repeatedly that the attorney general or prosecuting attorney has a legal discretion in determining whether an information shall be filed. In *Coon v. Attorney General*, 42 Mich. 65, the question was raised, but not decided, whether the court would in any case compel the attorney general to file an information against his own judgment; but in *Lamoreaux v. Attorney General*, 89 Mich. 146, it was held that, where the facts were made to appear clearly, such action might be compelled. But it was held in that case, following the case of *Vrooman v. Michie*, 69 Mich. 42, that the rule is inflexible that, before such action may be compelled at the suit of a private person, there must be affidavits so full and positive, from persons knowing the facts, as to make out a clear case of right, in such a way that perjury may be brought if any material allegation is false; that the law requires a precise and positive showing before the court will interfere with the action of the public official charged with the duty of filing an information.

It is said in the brief of relators' counsel that the failure of the people to hold an election from 1891 to 1895 is convincing evidence that the action vacating the incorporation was taken, and many cases are cited holding that where people have organized themselves under color of law into a municipal body, and have gone on exercising their franchises, their rights are regarded as depending quite as much on their acquiescence as upon the regularity of their origin, and no *ex post facto* inquiry can be

permitted to undo their corporate existence; and it is argued that the converse of this proposition should be true; that, where an existing corporation has ceased to act, it should not be permitted the people to resume corporate functions.

In 1 Dill. Mun. Corp. § 112 (4th Ed. § 168), the rule is laid down that-

"Unless otherwise specially provided by the legislature, the nature and constitution of our municipal corporations, as well as the purposes they are created to subserve, are such that they can only be dissolved by the legislature, or pursuant to legislative enactment. They may become inert or dormant, or their functions may be suspended, for want of officers or of inhabitants; but dissolved, when created by an act of the legislature, and once in existence, they cannot be, by reason of any default or abuse of the powers conferred, either on the part of the officers or inhabitants of the incorporated place. As they can exist only by legislative sanction, so they cannot be dissolved or cease to exist except by legislative consent or pursuant to legislative provision."

This, we think, is a correct statement of the law upon the subject, and it follows from this that the relators, before invoking the aid of the court, should be prepared to show that the village of Attica was dissolved in 1891, by action taken according to the provisions of the statute.

Among the cases cited by the relators' counsel is that of *Fractional School District* v. *Joint Board of School Inspectors,* 27 Mich. 3, in which the court refused, after a lapse of less than two years, to entertain *certiorari* to test the legality of the organization of the district. The reasons for this action are manifest. Rights had become vested, action taken, and liabilities incurred by a *de facto* organization, and public policy would not be best conserved by an inquiry into the regularity of the proceeding. These considerations do not apply with equal force to an attempted vacation of the corporation, and, if the principle of the case is to have application to the one under consideration, it would militate against the position

taken by relators' counsel; for it appears that from February, 1895, to May, 1896, there were *de facto* incumbents of the office of councilman, and an organization levying taxes and holding elections within the village.

We think that, under the showing presented by the relators, it did not appear by clear and cogent testimony that the petition alleged to have been forwarded to Daniel West was ever in fact presented to the council for action, or that the council, in submitting the question of vacating the corporation, acted upon that or any other petition. It does, perhaps, sufficiently appear that the village council called an election; but we think it can hardly be said to be a conclusive inference or a necessary inference that in doing so they acted upon a petition which it does not appear was ever placed before them, but was mailed to the president nine months before the action was taken. We think the prosecutor did not abuse his discretion, and that the writ of *mandamus* should not issue.

Judgment reversed.

The other Justices concurred.